IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A RAND MCNALLY-TND-TABLET SERIAL NUMBER: TND80B-088295-AP-18W44 CURRENTLY LOCATED IN THE POSSESSION OF THE FBI | Case No. 24-SW-372 |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, **Karen Rinehart**, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation and have been since April 11, 2021. I am currently assigned to the Federal Bureau of Investigation's West Tennessee Violent Crime Task Force and have been since September 2021. While on the task force I investigated business robberies, bank robberies and multiple others violent crimes. Prior to working for the Federal Bureau of Investigation, I worked for Immigration and Customs Enforcement as an Enforcement and Removal Operations officer. Prior to working for Immigration and Customs Enforcement, I was a detective with the Trumann Police Department. During my time as a law enforcement officer, I participated in multiple violent crime and other

investigations. During these investigations, I have conducted and/or participated in victim and suspect interviews and drafting and execution of search warrants.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is a RAND MCNALLY-TND-TABLET SERIAL NUMBER: TND80B-088295-AP-18W44, hereinafter the "Device." The Device is currently located in the possession of the Federal Bureau of Investigation.

5. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

1. On January 28, 2020, Victoria Floyd contacted the Federal Bureau of Investigation, Memphis Field Division, in reference to information to an alleged kidnapping of Victoria's daughter, Skyla Floyd. According to Victoria, Skyla had left Memphis, Tennessee approximately two months prior with a Mario Webb, to live in Savannah, Georgia.

2. On January 28, 2020, at approximately 0030 hours, Victoria received a video call via from Skyla. Skyla advised that she had been kidnapped by an unknown male, later identified as Brian Summerson, and was in a semi-truck. Skyla told Victoria she had been assaulted by the subject. Victoria saw a video image of Skyla, in which it appeared Skyla had bleeding, swelling, and bruising in the facial area from being struck. Victoria made a statement to the effect of, "I'll

get you the money, just please don't hit my daughter again." Subject made a comment to the effect of, "that was just a love tap."

3. Through investigation, FBI agents were able to identify the semi and Summerson, and to track their location to Florence, South Carolina. Contact was made with authorities in Florence, South Carolina, to be on the look out for the semi. Florence County deputies contacted agents in Memphis advising they had found the semi in a business parking lot. The semi was running with curtains blocking the windows, so they were unable to see inside. It was requested the Sheriff's Office contact the occupants to check the welfare of the occupants. Sheriff's Deputies made contact with the driver, identified as Brian Summerson, and asked if he would step out of the vehicle. Summerson stepped out to speak with deputies, at which time a female screamed from inside the semi that she had been kidnapped.

4. After a scuffle with Sheriff's Deputies, Brian Summerson was taken into custody. The female was identified as Skyla Floyd. Skyla had injuries to her face and was transported to the hospital for evaluation.

5. Brian Summerson provided consent to search the semi-trailer. The Device was located and seized during the consent search.

6. Summerson was indicted in this district, in case number 21-cr-20005-JTF, for kidnapping, extortion, conspiracy to commit kidnapping and conspiracy to commit extortion. He is awaiting trial.

7. In July 2024, Brian Summerson's attorney, Andre Wharton, stated there was a GPS device inside the semi-trailer and that device had a camera that potentially recorded during the alleged kidnapping.

8. On Sept 26, 2024, the defense attorney identified that the Device in FBI custody was the GPS device that likely had recorded video during the alleged incident. The Device had been listed on the evidence log as a tablet, and appeared to be a tablet computer. No one at the FBI recognized the Device as a GPS unit with a camera facing and potentially recording inside the semi-trailer.

9. The Device is currently in the lawful possession of the Federal Bureau of Investigation. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the Federal Bureau of Investigation.

## TECHNICAL TERMS

10. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images.

This storage media can contain any digital data, including data unrelated to photographs or videos.

b. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

c. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP

    addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    d. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

11. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

12. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

13. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but

not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

14.     *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

15.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
Karen Rinehart
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on October 8, 2024:

_____
HON. ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE